*In re* INITIATIVE PETITION NO. 2 ("THE NEW JERU-
SALEM PROPOSITION.")

No. 1526.    Opinion Filed June 9, 1910.

(109 Pac. 823.)

CONSTITUTIONAL LAW—Initiative and Referendum—"Measure Re-
jected by the People." Section 6, art. 5, of the ·Constitùtion,
providing that any measure rejected by the people through the
powers of the initiative and referendum cannot be proposed
by the initiative within three years thereafter by less than 25
per cent. of the legal voters, included (1) constitutional amend-
ments proposed by the Legislature or initiated by petition of
the people, and (2) bills or acts initiated by the Legislature or
by the people by an initiative petition.

(a) Such constitutional amendment or bill, before taking
effect, must be approved by a majority of the electors voting at
such election.

(b) A question having been submitted to the electors of
the state for acceptance or rejection by means of a joint reso-
lution of both houses of the Legislature, and being neither
such a constitutional amendment nor initiated bill, is not a
"measure rejected by the people" through the powers of the
initiative' and referendum, as contemplated by said section of
the Constitution.

(Syllabus by the Court.)

*Appeal from Order of Secretary · of State.*

Campbell Russell filed with the Secretary of State initiative
petition No. 2, state question No. 6, otherwise known as "The
New Jerusalem" proposition, and Frank Dale and others filed
their objections to the calling of an election thereon. From an
order of the Secretary of State, overruling the objections and hold-
ing the petition sufficient, the objectors appeal. Affirmed.

*Dale, Bierer & Hegler,* for appellants.
*Campbell Russell, pro se.*

WILLIAMS, J.    On December 31, 1909, Campbell Russell
lodged in the office of Secretary of State initiative petition No. 2,
being entitled "An act to create a district to be known as the New

Jerusalem District, and providing for the acquiring, location, survey and management of the same and making appropriation therefor." On the 4th day of January, A. D. 1910, Frank Dale and others filed with the Secretary of State their objections to calling and holding an election thereon. On the 6th day of January, A. D. 1910, a hearing was had on said objections before the Secretary of State, and the same were overruled, and the said petition held to be sufficient in all particulars. A transcript of said proceedings was filed in this court on March 22, 1910.

Upon the argument here on June 7, 1910, it was conceded that the proposition as to the right to question the repugnancy of the measure with the enabling act and state and federal Constitutions, in a hearing before the Secretary of State, had been decided against the appellant in the case of *Threadgill et al. v. Cross, infra,* 109 Pac. 558.

It is further urged, however, that the same measure as this herein sought to be initiated was rejected by the people through the powers of the initiative and referendum at the general November election in 1908, and as this measure is proposed by less than 25 per centum of the legal voters, based upon the total number of votes cast at the last general election for the state officer receiving the highest number of votes at such election for that reason this petition is insufficient. The First Legislature adopted Senate Joint Resolution No. 8, being in words and figures as follows:

"Submitting to a vote of the people the question of selecting a location for the state capital.

"Be it resolved by the Senate and House of Representatives of the State of Oklahoma:

"That the Secretary of State in and for the state of Oklahoma be and is hereby instructed to prepare and submit in due form and in accordance with the law, the following question to be voted on at the regular election to be held on the first Tuesday after the first Monday in November, 1908.

"Do you favor the state of Oklahoma's selecting and securing

a site for the location of a capital city, said site to be owned and controlled by, and the lots therein sold for the benefit of, the state?

☐   Yes.

☐   No.

"Approved May 29, 1908."

Laws 1907-08, p. 775.

This question was accordingly submitted at said election, the total voting thereat being 252,022; the total number of voters answering "Yes" being 117,441, and in the negative 75,772. The question arises as to whether (1) this joint resolution proposes a constitutional amendment, or (2) initiates a bill for the enactment of a statute, or (3) is it such a measure as is contemplated by section 6, art. 5, of the Constitution?

1. If the Legislature intended Senate Joint Resolution No. 8 as proposing an amendment to the Constitution, under section 1, art. 5, and section 1, art. 24 of the Constitution, it was necessary for a majority of all the electors voting at such election to vote in favor of such proposed amendment in order for it to be adopted. It did not receive such majority, and, if it be considered as a proposed constitutional amendment, it failed of adoption. If it be considered as a bill initiated by the Legislature, to take effect and be in force as a law when approved by the people, still it failed of passage and is of no effect. For section 3, art. 5, of the Constitution provides that any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. If it be considered as a referendum measure, though it received a majority of the votes cast thereon, provided by section 3, art. 5, of the Constitution, still it is ineffective. For a referendum measure is (1) where either the Legislature enacts a law and provides that the same shall, not take effect and be in force until it shall have been approved by a majority of the votes cast thereon at an election at which it is to be submitted, or (2) when

an emergency is not declared to such measure by virtue of section 58, art. 5, of the Constitution, and within 90 days after the adjournment of the session of the Legislature at which it was passed, a petition signed by 5 per cent. of the legal voters, based upon the total number of votes cast at the last election for the state officer receiving the highest number of votes at such election, is filed with the Secretary of State, demanding it to be submitted to the people for their approval or rejection. See section 7, art. 5, Const. Okla. In this case, by Joint Senate Resolution No. 8, the Legislature does not purport to have enacted anything into a law or statute, but directs the Secretary of State to submit a certain question to the people, upon which they are to answer "Yes" or "No." If it was intended to be a referendum measure, it was approved by having received a majority of the votes cast thereon; but it is ineffective, as it had never been enacted as a predicate for reference for rejection or approval.

Section 6, art. 5, of the Constitution provides:

"Any measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters."

Senate Joint Resolution No. 8 appears to have been submitted merely for advisory purposes. On March 27, 1908, two days before the Joint Senate Resolution No. 8 was passed, Joint House Resolution No. 11 was passed, being in words and figures as follows:

"Proposing an amendment to the Constitution of the State of Oklahoma.

"Be it resolved by the Legislature of the State of Oklahoma:

"That the following amendment to the Constitution of the state of Oklahoma be and the same is hereby proposed, and shall be submitted to a vote of the people under articles five and twenty-four of the Constitution of the state of Oklahoma, and an act entitled 'An act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles five and eighteen of the Constitution of the state of Oklahoma, to regulate

elections thereunder and to punish violations of this act,' approved April sixteenth, nineteen hundred eight:

"Article twenty-one of the Constitution of the state of Oklahoma shall be and the same is hereby amended by adding thereto the following:

"Section 2. The permanent capital shall be at such place within the state as the people may at any time select by a majority of the votes cast on the question at any election wherein the question is submitted, either by petition of the people under the initiative, or by act of the Legislature, and, until said permanent location is made, the temporary location shall be such as may be provided by law.

"Approved May 27, 1908."

Sess. Laws 1907-08, pp. 779, 780.

When Senate Joint Resolution No. 8 was adopted, it was evidently assumed that the amendment proposed by House Resolution No. 11 would probably be adopted at the general election in November, 1908, and that in such event the Legislature would be impowered to make a temporary location of the capital, and, if the majority of the electors were in favor of the capital being located in a city the site of which was to be owned and controlled by the state and the lots therein sold for the benefit of the state, that such temporary location should make toward that end. House Joint Resolution No. 11, which was adopted just two days before Senate Joint Resolution No. 8, specifically sets out that the same was proposed as a constitutional amendment. And when you consider these two resolutions together, both of them relating to the capital matter, it is evident that by Senate Joint Resolution No. 8 the same was not intended to be proposed as a constitutional amendment.

Section 3, art. 5, of the Constitution, providing that referendum petitions shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded, then provides that the style of all bills shall be: "Be it enacted by the people of the state of Oklahoma." In *Ex parte*

*Hudson,* 3 Okla. Cr. 393, 106 Pac. 541, it was held by the Criminal Court of Appeals of this state that that portion of section 3, art. 5, of the Constitution which provides that the style of all bills shall be, "Be it enacted by the people of the state of Oklahoma," applies only to bills adopted by the people under the initiative and referendum clause of the Constitution. The decision in that case was afterwards followed by this court in the cases of *Mayes v. Pitchford, District Judge,* 109 Pac. 821, *Myers v. Bailey, District Judge,* 109 Pac. 820, and *Turner v. McCain, Superior Court Judge,* 109 Pac. 821, all reported in 26 Okla. Considering the fact that Senate Joint Resolution No. 8 has no enacting clause, and is so incomplete and indefinite, it may be fairly inferred that it was not contemplated that such resolution was intended to initiate a bill to enact a statute. Obviously, it was the intention of the Legislature to submit this question to be answered by the people, whose answer would be advisory to the succeeding Legislature. As to whether the Legislature, under the initiative and referendum provisions, had a right to submit such an advisory proposition, it is not essential here to determine.

This, neither being a proposed constitutional amendment nor a measure initiated to become a law, was not rejected, and, never having been rejected, the fact that substantially the same measure may have within three years been sought to have been initiated by less than 25 per centum of the legal voters, and with over 8 per centum of such voters, would not thereby render such initiative petition insufficient. It follows that the contention of the appellant is without merit.

The order of the Secretary of State is accordingly affirmed.

All the Justices concur, except HAYES, J., not sitting.